**Semainesh TEWELDE, Plaintiff,**

v.

**Madeleine K. ALBRIGHT, Secretary of State, et at. Defendant.**

**No. CIV.A. 98–2872 RCL.**

United States District Court, District of Columbia.

March 8, 2000.

David H. Shapiro, Swick & Shapiro, Washington, DC, for Plaintiff.

Mark E. Nagle, Wilma Antoinette Lewis, Scott Sutherland Harris, U.S. Attorney's Office, Washington, DC, Thomas Leo Doran, Decaro, Doran, Siciliano, Gallagher & DeBlasis, L.L.P., Lanham, MD, for Defendant.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This matter comes before the Court upon the defendant's motion for summary judgment, made pursuant to Rule 56(c) of the Federal Rules of Civil Procedure. The plaintiff, Semainesh Tewelde, is an African–American female who, at the time she filed this complaint, was employed by the American Embassy Association ("AEA") in Berlin, Germany.[1] She brings this action

alleging race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended by the Equal Employment Act of 1972, 42 U.S.C. § 2000e et seq. The moving defendant is Madeleine K. Albright, the Secretary of State ("the Secretary"), named in her official capacity as head of the United States State Department ("USDOS"). The defendant moves for summary judgment arguing that she is not a proper defendant in this action.

## I. BACKGROUND

The plaintiff is an African–American female who, at the time of the alleged discriminatory action resided with her husband in Berlin, Germany. The plaintiff was hired in September 1994, by the AEA to work as a child care provider at the AEA's pre-school facility in Berlin. *See* Complaint, at ¶ 4. The plaintiff filed her complaint in this action on November 25, 1998.[2] The complaint alleges several discriminatory and retaliatory incidents, which allegedly began sometime in 1995 and culminated in the dismissal of the plaintiff on February 24, 1998.

In her complaint, the plaintiff alleges that she started experiencing racially motivated difficulties at the AEA beginning in 1995, soon after a white female supervisor took over the mantle at the AEA's pre-school. *See* Complaint, at ¶ 8. It was then, she claims that she "suffered a series of nasty racial comments and an assault during which racial epithets were uttered toward her." *Id.*

The plaintiff contends that approximately between September 1996 and July 1997, her work hours as a child care provider and a retail clerk were involuntarily reduced. Her hours were first reduced from 40 hours to 30 hours a week, and eventually to 12 hours a week. In the "spring, summer, and fall" of 1997, the plaintiff

---

**1.** AEA is also a defendant, but is not a party to the pending motion.

**2.** The Court at this time will not address the timeliness of the plaintiff's Title VII claim as the case will be decided on other grounds.

complained to AEA and Embassy officials about alleged "racially and ethnically discriminatory environment at the AEA and its effects on her." *See* Complaint at ¶ 11.

On February 24, 1998, the plaintiff was informed by AEA officials that due to "severe decline in business," her position as a child care provider was being eliminated. The plaintiff was offered an alternate position at the AEA's Guest House facility and was asked to respond to the offer by February 24, 1998. *See* Def. Exhibit K, Letter from Norman Bridgeford to Plaintiff (Feb. 13, 1998). The plaintiff, however, refused to accept this new position and was terminated from her employment on February 24, 1998. *Id.* The plaintiff attributes the reduced hours and her eventual dismissal from her position at the AEA to racial discrimination and retaliation for her complaint.

The plaintiff argues that the alleged illegal discriminatory actions were motivated because of her national origin and race, (black female, whose national origin is Eritrean and/or Ethiopian and/or African) in violation of Title VII of the Civil Rights Act of 1964. *Id.* at ¶ 9. Accordingly, the plaintiff instituted this suit against the AEA and the USDOS pursuant to Section 717 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16.

The plaintiff contends that because the USDOS has a "heavy hand in the management" of the AEA, it should be aggregated with the AEA as a single employer and should be held responsible for the alleged Title VII violations. The defendant moves for summary judgment based on the ground that the Secretary is not the proper defendant as USDOS never had a direct employment relationship with the plaintiff.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that a District Court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is (1) no

genuine issue as to any material fact and that (2) the moving party is entitled to judgment as a matter of law." *See* Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C.Cir.1995). An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In *Celotex*, the Supreme Court determined that summary judgment is appropriate "against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party must go beyond the pleadings and establish the existence of controverted issues by affidavits, depositions, answers to interrogatories, or admissions on file. *Id* at 323, 106 S.Ct. 2548.

## III. ANALYSIS

Plaintiff asserts claims of racial discrimination in violation of Section 717 of Title VII, 42 U.S.C. § 2000e–16. The plaintiff claims that the Secretary should be held liable as much as the AEA for the alleged racial discrimination she suffered. The Secretary argues that there is no employment relationship between the plaintiff and the USDOS, therefore, plaintiff's claim against the USDOS should be dismissed. The Court agrees.

The primary issue before the Court is whether the Secretary is a proper defendant in this case. The plaintiff seeks to aggregate the AEA and the USDOS together, arguing that the AEA is an *instrumentality* of the USDOS. As an instrumentality, the plaintiff argues, the Secretary is subject to liability under Section 717 of Title VII, 42 U.S.C. § 2000e–16, as if the plaintiff was an employee of

the USDOS. The plaintiff, in effect contends that the USDOS and AEA should be combined as a "single employer" for the purposes of this action.

The Secretary, however, objects to the plaintiff's "single employer" analysis. The Secretary contends that the AEA is the only proper defendant in this case as the USDOS has never had any direct employment relationship with the plaintiff. The Secretary further contends that the AEA is an independent non-governmental organization, which functions independent of the USDOS. Accordingly, the Secretary argues that the USDOS is not the proper defendant.

### A. The AEA is not an Instrumentality of the USDOS

There is no bright line rule or specific test to determine if an entity is a federal instrumentality. However, courts over the years have explored various factors to aid their determination. *See Lebron v. National R.R. Passenger Corp.*, 513 U.S. 374, 397–98, 115 S.Ct. 961, 130 L.Ed.2d 902 (1995) (whether government officers handle and control its operations); *United States v. Township of Muskegon*, 355 U.S. 484, 486, 78 S.Ct. 483, 2 L.Ed.2d 436, (1958) (whether governmental control over entity is such that it "could properly be called a 'servant' of the United States in agency terms"); *Cherry Cotton Mills, Inc. v. U.S.*, 327 U.S. 536, 539, 105 Ct.Cl. 824, 66 S.Ct. 729, 90 L.Ed. 835, (1946) (whether entity is supported by governmental aid; whether entity's profits are distributed to and its losses borne by government); *Clallam County, Wash. v. U.S.*, 263 U.S. 341, 343, 44 S.Ct. 121, 68 L.Ed. 328 (1923) (whether entity is owned by government).

■ Applying these factors, it is evident that the AEA is not a governmental instrument. Although the AEA was created pursuant to federal legislation [3], the Association has mostly functioned independent of the federal government. The AEA's day-to-day operation, including the authority to manage personnel issues, are controlled by its General Manager, Scott Hanning. Mr. Hanning in turn reports directly to the AEA's Board of Trustees. *See* AEA Bylaws § 2(a)(1) at 3. The Board is also independently governed by its own distinct constitution and bylaws. The bylaws also establish how the Association's directors are chosen and the length of the directors' terms. The Board has the authority to hire and fire the General Manager. At the filing of this law suit, the Board was composed of two USDOS employees and the rest was made up of U.S. employees from the Internal Revenue Service, the Drug Enforcement Administration, the Department of the Treasury, and the Customs Service. *See* Aff. of Warren P. Nixon, at ¶ 4.

The AEA is also financially independent and does not receive financial assistance from the USDOS. The AEA is not owned or directly funded by the federal government. Its revenues are neither added to the federal treasury nor borne by the federal government. Hence, the Association not only exhibits none of the indicia of a federal instrumentality, but is indistinguishable from a typical independent non-governmental, non-profit organization.

### B. Single Employer Status Under Title VII

■ Next the plaintiff urges the Court to aggregate the AEA and the USDOS as a "single employer" for the purpose of her claim. The plaintiff invites the Court to institute a test relied by the EEOC in *Fenstermacher v. Department of State*, EEOC Appeal No. 01922787, 1994 EEOPUB LEXIS 4075 (May 26, 1995), to sup-

---

**3.** The AEA was organized pursuant to 22 U.S.C. § 2703(a) & 31(a) of the State Department Basic Authorities Act. The Act states that the Secretary may "authorize and assist in the establishment, maintenance, and operation by civilian officers and employees of the Government of non-Government-operated services and facilities at posts abroad." *See* 22 U.S.C. § 2703(a)

port her claim under the "single employer" theory. Despite the striking similarity of the fact patterns between *Fenstermacher* and the instant case, *Fenstermacher*'s applicability and precedential value are limited[4]. As such, the Court will decline to follow the holding in *Fenstermacher*.

■ The predominant trend in determining "single employer"[5] status under Title VII, is to apply the standard promulgated by the National Labor Relations Board in NLRB cases. Under the NLRB standard, courts look to the following factors: (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control[6]. *See Radio & Television Broadcast Technicians Local Union 1264 v. Broadcast Service of Mobile, Inc.*, 380 U.S. 255, 256, 85 S.Ct. 876, 13 L.Ed.2d 789 (1965) (Supreme Court endorsed the "single employer" test in NLRB cases); *Mas Marques v. Digital Equip. Corp.*, 637 F.2d 24, 27 (1st Cir. 1980). Later, Courts extended the use of the NLRB test to Title VII cases[7]. *See Baker v. Stuart Broadcasting*, 560 F.2d 389 (8th Cir.1977); *Armbruster v. Quinn*, 711 F.2d 1332, (6th Cir.1983)(Same); *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir.1983)(same); *Rogers v. Sugar Tree Prod.*, 7 F.3d 577 (7th Cir. 1993)(same); *Cook v. Arrowsmith Shel-*burne, *Inc.*, 69 F.3d 1235, 1241 (2nd Cir. 1995) (same).

### 1. Interrelatedness of Operations

■ The first factor mentioned in the NLRB standard is interrelation of operation. The NLRB has identified seven indicia of interrelatedness: "(1) combined accounting records; (2) combined bank accounts; (3) combined lines of credit; (4) combined payroll preparation; (5) combined switchboard; (6) combined telephone numbers; and (7) combined offices." *See Eichenwald v. Krigel's Inc.*, 908 F.Supp. 1531, 1540–41 n. 8 (D.Kan.1995); *Tatum v. Everhart*, 954 F.Supp. 225, 230 (D.Kan.1997). None of these elements exist in the instant case. The AEA and the USDOS (U.S. Embassy in Berlin) do not share "common offices, record keeping, bank accounts, or equipment." *See* Reply Brief at 5, n. 1. Furthermore, the AEA annually establishes its own budget, pays its own bills, keeps its own payroll. *See* AEA By-Laws, at § X(2) & (4)(a); Aff. of Donald S. Hays Aff., at ¶ 8.

### 2. Centralized Control of Labor Relations

■ The second factor of the NLRB standard deals with the question of whether there is centralized control of labor relations. This strand of the test is usual-

---

4. It is well established that EEOC decisions and precedents do not have controlling precedent in federal courts. Furthermore, even if the Court had wished to rely on EEOC precedent, the EEOC in *Fenstermacher* never articulated its views on whether AEA Commissary employees could be considered federal employees under Title VII. Thus *Fenstermacher* applicability, if any, is very limited.

5. The "single employer" test is also sometimes referred to as the "integrated enterprise test." *See, e.g., Frank v. U.S. West, Inc.*, 3 F.3d 1357 (10th Cir.1993). Courts also have interchangeably applied other tests, such as an agency theory or "alter ego" test and "instrumentality" test. *See United Telegraph Workers v. N.L.R.B.*, 571 F.2d 665 (D.C.Cir. 1978)

6. Courts generally have held that no single factor is controlling and all of the factors need not be present when applying the NLRB "single employer" test to private entities in Title VII cases. *See Armbruster*, 711 F.2d at 1337–38; *Boich Mining Co. v. NLRB*, 955 F.2d 431, 434 (6th Cir.1992).

7. While the NLRB test was initially developed to determine aggregation issues dealing with private corporations, courts have applied the test in cases involving governmental entities. *See Artis v. Francis Howell North Band Booster Ass'n, Inc.*, 161 F.3d 1178 (8th Cir.1998)(applying the test to a private entity and a governmental entity); *Owens v. American National Red Cross*, 673 F.Supp. 1156, 1160–61 (D.Conn.1987) (applying the test and concluding the national organization was not plaintiff's employer).

ly accorded greater weight than others. *See Webb v. American Red Cross et al.,* 652 F.Supp. 917 (D.Neb.1986); *Thornton v. Mercantile Stores Co.,* 13 F.Supp.2d 1282, 1291 (M.D.Ala.1998). The "control" required to meet the test of centralized control of labor relations is "actual and active control of day-to-day labor practices." *Fike v. Gold Kist, Inc.,* 514 F.Supp. 722, 727 (N.D.Ala.1981) cited in *Webb,* 652 F.Supp. 917, 920 (D.Neb.1986).

There has been no showing that the USDOS either controls or has a policy of engaging in AEA personnel matters. Specifically, the USDOS does not hire, fire, set wages, working hours, working conditions, or fringe benefits of AEA employees. *See* Nixon Aff., at ¶ 10; Hays Aff., at ¶ 10. In fact, the USDOS as a rule avoids involvement in employee association personnel matters. *Id.* Uncontroverted evidence advanced by the defendant shows that the AEA had unfettered control over personnel matters at all relevant times and that the USDOS had no role in the plaintiff's dismissal.

The plaintiff, however, alleges that the USDOS has a "heavy hand in the management of the AEA" and that this involvement influences the AEA's personnel policy. *See* Plaintiff's Opp. at 2. The plaintiff incorrectly points to the make-up of AEA's board as evidence of USDOS' influence over the AEA's personnel policy. She claims that because all members of the AEA's Board are USDOS employees, AEA's personnel policies are controlled by the Board through its General Manager. The plaintiff presents no evidence to support her position. The record, however, speaks to the contrary. Despite the plaintiff's assertion, twelve of AEA's fourteen Board members come from other branches of the U.S. Government. In fact, only two of the AEA's fourteen Board of Trustees

are employees of the USDOS. *See* AEA Bylaws at 1. In sum, the USDOS did not have "actual and active control of day-to-day labor practices" at the AEA.

### 3. Common Management

■ In reviewing the common management factor, the existence of interlocking officers and directors is particularly relevant. *See Webb,* 652 F.Supp. at 920. In the instant case, there is no evidence of common management between the AEA and the USDOS. The USDOS does not have interlocking officers and directors that share a "common management" role with the AEA. The AEA has its own distinctly independent Board and its day-to-day activities are managed by a professional staff that reports directly to its Board.

The plaintiff claims that the USDOS is involved in the management of the AEA. To support her claim, the plaintiff points to the Office of Commissary & Recreation Affairs of the USDOS, and its oversight of the AEA's Commissary. *See* Plaintiff's Opp. at 13. She presents Diane De Vivo's affidavit as evidence to support her claim of common management.

Ms. De Vivo's affidavit, however, suggest that her role is limited to broadly "overseeing the operational and financial management" of employee associations. Ms. De Vivo states that her office oversees employee associations by "issu[ing] guidance in the form of collective cables... on topics ranging from reporting deadlines and inventory control procedures to audit guidelines and Y2K updates." *Id.* at 1. Ms. De Vivo also reviews a set of reports from the AEA in accordance with the AEA's charter[8]. Oversight, however, does not mean common management or indicate that Ms. De Vivo or the USDOS is actively

---

**8.** All Embassy Associations established and chartered pursuant to Section 31(a) of the State Department Basic Authorities Act are required to comply to the provisions of the Act. Under the Act, the Secretary's authority is limited to approving association charters,

and monitoring and certifying that their operations are properly managed according to USDOS regulation. *See* 6 FAM 512 & 522. Thus, the USDOS' monitoring cannot be considered evidence of common management.

**19**

engaged in the management of the AEA's Commissary. *See* De Vivo's Aff. at 1.

Ms. De Vivo's oversight of the above activities cannot be equated with management of the AEA's Commissary as the plaintiff suggests. Thus, the Court finds that there is no evidence of common management between the AEA and the US-DOS.

### 4. Common Ownership or Financial Control

The plaintiff does not dispute the fact that the USDOS has no financial ownership interest in the AEA. It is also uncontroverted that the AEA is self sufficient and does not rely financially on the US-DOS. As noted above, the evidence reflects that the AEA meets its budget needs from its business activities.

The plaintiff, however, claims that the USDOS has "pervasive" control over AEA's financial management. *See* Plaintiff's Opp. 14–15. The plaintiff points to Mr. Donald Hays' presence on the AEA's Board as the Ambassador's non-voting representative to show that the USDOS has a "pervasive control" over the AEA's financial activities. *Id.* The plaintiff's claim emanates directly from Mr. Hays' role on AEA's Board. A close examination of Mr. Hays' role, however, suggests that he was not in any position to dictate or exert financial control over AEA's finances at all relevant times.

Mr. Hays served as the Minister–Counselor for Administrative Affairs at the U.S. Embassy, Germany from August 1992 to July 1996. As the senior management officer for the U.S. Mission to Germany, Mr. Hays was only responsible for the "operational and financial management" of the U.S. Embassy and not the AEA. His role with the AEA was "limited to advising the Board of the interest of the Ambassador" and the U.S. Government. *See* Mr. Hayes' Aff. ¶ 4, at 1,.

The plaintiff also contends that as part of his role on the Board, Mr. Hays "en-sures that AEA carrie[s] out its annual audit and other reporting obligations" to the USDOS. *See* Plaintiff's Opp. at 14. Thus, the plaintiff suggests, Mr. Hays role is not limited to an advisory role. *Id.*

As a non-voting member of the Board, Mr. Hays does not dictate policy matters or get involved in day-to-day management matters. Mr. Hays advises the Board on matters affecting the U.S. Government pursuant to the AEA's charter. *See* Mr. Hayes' Aff. ¶ 4, at 1. The plaintiff mistakenly equates the USDOS's effort to help the AEA comply with its own bylaws and charter as "pervasive control" of the AEA. Compliance with the charter, although not absolutely required, allows the AEA to receive assistance from the Central Commissary and Recreation Affairs. It also allows the AEA the continued free use of space, utilities, and properties from the USDOS. *See* 6 FAM 550 at 1.

■ In sum, the plaintiff cannot establish that the AEA and the USDOS were a "single employer" under Title VII. Ultimately, single employer status is characterized by the absence of an "arms's length relationship found among the integrated companies" or organizations. *See Local No. 627, Int'l Union of Operating Engineers v. N.L.R.B.*, 518 F.2d 1040, 1046 (D.C.Cir.1975). In the instant case, the uncontroverted evidence shows that at all relevant times the AEA operated "at an arms length" and independently from the USDOS.

■ The focal point of the Court's inquiry in such a case as the case before the Court is "the degree of control an entity has over the adverse employment decision on which the Title VII suit is based." *See Llampallas v. Mini–Circuits, Lab., Inc.*, 163 F.3d 1236, 1244 (11th Cir.1998). By her own account, the USDOS neither controlled or influenced the AEA's decision regarding the plaintiff's employment. The plaintiff also concedes that she was hired and dismissed by the AEA and not the

20

USDOS. *See* Exhibit M, at 2[9]. Thus, plaintiff has failed to show that the US-DOS had any control over AEA's adverse employment decision against the plaintiff.

The plaintiff has failed to put forth credible evidence to show that the USDOS was involved in the alleged Title VII violations. The plaintiff has failed to establish that the AEA and the USDOS were a "single employer" in this matter. Accordingly, the Court will grant the defendant's motion for summary judgment.

## V. CONCLUSION

Interpreting all factors in a light most favorable to the plaintiff, the Court rules that the plaintiff did not present sufficient evidence to permit a jury to conclude that the defendant, Madeleine K. Albright and USDOS had control over the AEA. Accordingly, the defendant is entitled to summary judgment with respect to plaintiff's claim that USDOS should be accountable for AEA's alleged Title VII violation.

---

**9.** *See* Plaintiff's July 17, 1997 letter to the AEA's Board requesting reinstatement to her child care position. In the letter, the plaintiff states, "*I realize that I'm not a government employee and that the Embassy is a separate entity from the AEA.*"